Clerk

43

In The United States District Court
For The Eastern District Of Michigan


Christopher McDaniel

                                    Case: 2:23-cv-10923
                                    Assigned To : Parker, Linda V.
    V.                              Referral Judge: Stafford, Elizabeth A.
Ms. Stewart                         Assign. Date : 4/20/2023
Haynie Bradley                      Description: PR MCDANIEL V. STEWART ET AL (NA)


                    Verification Of Complaint


    I, Christopher McDaniel declares under the penalty
of perjury that the facts alleged herein this Complaint
Are true and correct to the best of my knowledge
And belief.


                    POOR QUALITY ORIGINAL


   4-17-23                          Christopher McDaniel
   Date                             Christopher McDaniel
                                    320 N. Hubbard
                                    St. Louis, Mi 48880

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

# UNITED STATES DISTRICT COURT
### for the
_Eastern_ District of _Michigan_

_____ Division

|  |  |
|---|---|
| Christopher McDaniel<br><br>_Plaintiff(s)_<br>_(Write the full name of each plaintiff who is filing this complaint._<br>_If the names of all the plaintiffs cannot fit in the space above,_<br>_please write "see attached" in the space and attach an additional_<br>_page with the full list of names.)_<br>–v–<br><br>Stewart<br><br>Haynie Bradley<br><br>_Defendant(s)_<br>_(Write the full name of each defendant who is being sued. If the_<br>_names of all the defendants cannot fit in the space above, please_<br>_write "see attached" in the space and attach an additional page_<br>_with the full list of names. Do not include addresses here.)_ | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Case No. _____

_(to be filled in by the Clerk's Office)_

## COMPLAINT FOR VIOLATION OF CIVIL RIGHTS
### (Prisoner Complaint)

---

### NOTICE

Federal Rules of Civil Procedure 5.2 addresses the privacy and security concerns resulting from public access to electronic court files. Under this rule, papers filed with the court should _not_ contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include _only_: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number.

Except as noted in this form, plaintiff need not send exhibits, affidavits, grievance or witness statements, or any other materials to the Clerk's Office with this complaint.

In order for your complaint to be filed, it must be accompanied by the filing fee or an application to proceed in forma pauperis.

---

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

## I.   The Parties to This Complaint

### A.   The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint.  Attach additional pages if needed.

| | |
|---|---|
| Name | Christopher McDaniel |
| All other names by which you have been known: | |
| ID Number | 720417 |
| Current Institution | (ST.F) |
| Address | 320 N. Hubbard |
| | St.Louis — MI — 48880 |
| | City          State          Zip Code |

### B.   The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation.  Make sure that the defendant(s) listed below are identical to those contained in the above caption.  For an individual defendant, include the person's job or title (if known) and check whether you are bringing this complaint against them in their individual capacity or official capacity, or both.  Attach additional pages if needed.

Defendant No. 1

| | |
|---|---|
| Name | Stewart |
| Job or Title (if known) | Resident Unit Manager |
| Shield Number | |
| Employer | Mich Dept of Corrections |
| Address | (JCS)  3100 Cooper St |
| | Jackson — MI — 49201 |
| | City          State          Zip Code |

☑ Individual capacity   ☐ Official capacity

Defendant No. 2

| | |
|---|---|
| Name | Haynie Bradley |
| Job or Title (if known) | |
| Shield Number | |
| Employer | Mich Dept of Corrections |
| Address | (J.C.S) 3100 Cooper St |
| | Jackson — MI — 49201 |
| | City          State          Zip Code |

☑ Individual capacity   ☐ Official capacity

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

Defendant No. 3
    Name                              _____
    Job or Title *(if known)*      _____
    Shield Number              _____
    Employer                    _____
    Address                      _____
                                    _____

|  | *City* | *State* | *Zip Code* |

☐ Individual capacity    ☐ Official capacity

Defendant No. 4
    Name                              _____
    Job or Title *(if known)*      _____
    Shield Number              _____
    Employer                    _____
    Address                      _____
                                      _____

|  | *City* | *State* | *Zip Code* |

☐ Individual capacity    ☐ Official capacity

## II. Basis for Jurisdiction

Under 42 U.S.C. § 1983, you may sue state or local officials for the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]." Under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971)*, you may sue federal officials for the violation of certain constitutional rights.

A.    Are you bringing suit against *(check all that apply)*:

     ☐ Federal officials (a *Bivens* claim)

     ☑ State or local officials (a § 1983 claim)

B.    Section 1983 allows claims alleging the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]." 42 U.S.C. § 1983. If you are suing under section 1983, what federal constitutional or statutory right(s) do you claim is/are being violated by state or local officials?

Due process Retaliation )-Haynie Bradley Retaliation )-Stewart

C.    Plaintiffs suing under *Bivens* may only recover for the violation of certain constitutional rights. If you are suing under *Bivens*, what constitutional right(s) do you claim is/are being violated by federal officials?

## Underlying Facts

On 2-24-22, The Plaintiff approached Stewart about my property. Stewart cut me off while I was speaking and, demanded I clean my bunk. I explained to her that "it was already clean". (see exhibit 7, Plaintiff's hearing investigation). Stewart then stated," I'll fuck your shit up then". Stewart turned around and stormed off towards my bunk area, so I yelled, "You better not fuck with me" in response to Stewart's actions and statements. Ms. Stewart was at that point charging at me with what I believe was a broomstick in her hand and stepped into my personal space yelling" I'm a Jacktown Bitch, whatchu gonna do?". Stewart body language was aggressive (with her hand in my face) Along with her language. Stewart appeared as though she was going to attack the Plaintiff to the point of another inmate stepping in front of Stewart to pull the Plaintiff from harms way. The Plaintiff requested the video for proof of Stewarts actions. (see exhibit 7, page 2 of 2, plaintiff request video footage for hearing). Stewart's conduct was in response to the grievances I filed on her for denying Court Orders, Access to the Court and conduct unbecoming of an employee. (see exhibits 1, 13, Defendants prior grievances -Retalitory motive). I was detained by yard officers and placed in Temporary Segregation. The Defendant then wrote the Plaintiff a class(I) non-bondable misconduct, when the Defendant knowingly should've written a class II misconduct that doesn't include Segregation consequences. (see exhibits 3 and 4, MDOC's definition of insolence class II, Threatening behavior Class I).

Because of Stewart's actions the Plaintiff was placed in a unfurnished cell where I was deprived of proper bathroom breaks and access to drinking water for over 29 hours. The Plaintiff was taunted by staff telling me "to start praying because I was at her (Stewart) mercy". Plaintiff incurred bruising up & down the left and right side of his body and was deprived of sleep because of sleeping on bare floor. The Haynie called me out to question me about the situation. I explained to him about Stewarts behavior and possible attempt at attacking me and to view the camera. Haynie the jumped up yelling "you are a liar, get out my office". Before I left the office, I demanded once more that he review the camera. (see exhibit 8, Policy on mental abuse (Stewart, Haynie). Haynie then abused his authority to transfer the Plaintiff from a level 1 facility to a level 4 facility against policy in retaliation to cover for Stewarts misconduct. Plaintiff was never supposed to be transfered prior to the hearing for the misconduct. (see exhibit 9, dealing with pending misconducts prior to transfer). Furthermore Haynie did a departure on Plaintiff's screening form to up Plaintiff security level. (see exhibit 12, Plaintiff's screening form). This was directly in violation of policy, Haynie departed from McDaniel's true security. level for security reasons that did not reflect the policy's reasons for placement. (see exhibit 10). Haynie abused his authority to waive defendant Actual Placement level for "investigation warrants increased security level. (see exhibit 12).

Haynie held no right per policy to waive McDaniel's Actual Placement. The operating procedure states this waiver is only for reasons unrelated to security, that the prisoner must be placed in some other level (see exhibit 11). When the Plaintiff was transfer to level 4, he was ultimately found guilty of the lesser offense of insolence. (see exhibit 2 plaintiff misconduct hearing). (also see exhibit 6&5, lesser included charges and explanation of non bordable charges). Plaintiff spent over 30 days in a level 4 facility and was removed from his college program and lost $669.90 to Jackson College. Stewart has access to the definitions of "insolence and threatening behavior" and, Stewart knew there was no threat which expressed an intent to injure or physically harm/abuse anyone.

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

D. Section 1983 allows defendants to be found liable only when they have acted "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia." 42 U.S.C. § 1983. If you are suing under section 1983, explain how each defendant acted under color of state or local law. If you are suing under *Bivens*, explain how each defendant acted under color of federal law. Attach additional pages if needed. Stewart was acting in her official capacity as a Resident Unit Manger when she wrote the wrongful Misconduct against Plaintiff. Haynie was acting in his official capacity as an inspector/coordinator when he Requested the plaintiff to be transfered

## III. Prisoner Status

Indicate whether you are a prisoner or other confined person as follows *(check all that apply)*:

- [ ] Pretrial detainee
- [ ] Civilly committed detainee
- [ ] Immigration detainee
- [x] Convicted and sentenced state prisoner
- [ ] Convicted and sentenced federal prisoner
- [ ] Other *(explain)* _____

## IV. Statement of Claim

State as briefly as possible the facts of your case. Describe how each defendant was personally involved in the alleged wrongful action, along with the dates and locations of all relevant events. You may wish to include further details such as the names of other persons involved in the events giving rise to your claims. Do not cite any cases or statutes. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

A. If the events giving rise to your claim arose outside an institution, describe where and when they arose.

B. If the events giving rise to your claim arose in an institution, describe where and when they arose.

I-Unit at Jackson Correctional facility

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

C.     What date and approximate time did the events giving rise to your claim(s) occur?

2-24-22 Approx 3:30pm Thru 2-25-22 Approx 3pm

D.     What are the facts underlying your claim(s)? *(For example: What happened to you?  Who did what? Was anyone else involved?  Who else saw what happened?)*

## V.     Injuries

If you sustained injuries related to the events alleged above, describe your injuries and state what medical treatment, if any, you required and did or did not receive.

Bruises - left & right Shoulder / Hips
Headaches / Stomach sickness from lack of sleep

No Medical treatment Required —

## VI.    Relief

State briefly what you want the court to do for you. Make no legal arguments. Do not cite any cases or statutes. If requesting money damages, include the amounts of any actual damages and/or punitive damages claimed for the acts alleged.  Explain the basis for these claims.

Compensation $669.90 — loss of monies to Jackson College - Stewart/Hynie Bradley

Punative Damages $50.00 per day of Retalitory transfer from 2-25-22 - present
        Hynie Bradley - Raise of Security Level

        $30,000.00 — Loss of College program - Retalitory upcharge w/misconduc
        Stewart Placement in Segregation & Raised Sc

**VII.    Exhaustion of Administrative Remedies Administrative Procedures**

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), requires that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

Administrative remedies are also known as grievance procedures. Your case may be dismissed if you have not exhausted your administrative remedies.

A.    Did your claim(s) arise while you were confined in a jail, prison, or other correctional facility?

☑ Yes

☐ No

If yes, name the jail, prison, or other correctional facility where you were confined at the time of the events giving rise to your claim(s).

_____

B.    Does the jail, prison, or other correctional facility where your claim(s) arose have a grievance procedure?

☑ Yes

☐ No

☐ Do not know

C.    Does the grievance procedure at the jail, prison, or other correctional facility where your claim(s) arose cover some or all of your claims?

☑ Yes

☐ No

☐ Do not know

If yes, which claim(s)?

Retaliation - Haynie Bradley - transfer - speech - Due Process

Retaliation - Stewart - speech - false Misconduct

_____

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

D.   Did you file a grievance in the jail, prison, or other correctional facility where your claim(s) arose concerning the facts relating to this complaint?

☑ Yes  *Yes*

☑ No

If no, did you file a grievance about the events described in this complaint at any other jail, prison, or other correctional facility?

☑ Yes

☐ No

E.   If you did file a grievance:

1.   Where did you file the grievance?

Jackson Correctional Facility (I had to mail them from New Facilit

2.   What did you claim in your grievance?

Stewart placed a higher charge on Plaintiffs misconduct for retaliation Purposes (grievances/complaints)

Haynie - Retaliated against Plaintiff for complaints against Stewart to cover up, By transfer of facilities.

3.   What was the result, if any?

Rejected for timeliness

4.   What steps, if any, did you take to appeal that decision? Is the grievance process completed? If not, explain why not. *(Describe all efforts to appeal to the highest level of the grievance process.)*

I appealed to all three steps available (I, II, III)

F.    If you did not file a grievance:

    1.    If there are any reasons why you did not file a grievance, state them here:

    2.    If you did not file a grievance but you did inform officials of your claim, state who you informed, when and how, and their response, if any:

G.    Please set forth any additional information that is relevant to the exhaustion of your administrative remedies.

Policy exhibit - Policy on mailing grievances on transfer

*(Note: You may attach as exhibits to this complaint any documents related to the exhaustion of your administrative remedies.)*

## VIII. Previous Lawsuits

The "three strikes rule" bars a prisoner from bringing a civil action or an appeal in federal court without paying the filing fee if that prisoner has "on three or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury." 28 U.S.C. § 1915(g).

To the best of your knowledge, have you had a case dismissed based on this "three strikes rule"?

☐ Yes

☑ No

If yes, state which court dismissed your case, when this occurred, and attach a copy of the order if possible.

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

A.   Have you filed other lawsuits in state or federal court dealing with the same facts involved in this action?

☐ Yes

☑ No

B.   If your answer to A is yes, describe each lawsuit by answering questions 1 through 7 below. *(If there is more than one lawsuit, describe the additional lawsuits on another page, using the same format.)*

1.   Parties to the previous lawsuit

Plaintiff(s)   _____

Defendant(s)   _____

2.   Court *(if federal court, name the district; if state court, name the county and State)*

_____

3.   Docket or index number

_____

4.   Name of Judge assigned to your case

_____

5.   Approximate date of filing lawsuit

_____

6.   Is the case still pending?

☐ Yes

☐ No

If no, give the approximate date of disposition.   _____

7.   What was the result of the case? *(For example:  Was the case dismissed?  Was judgment entered in your favor?  Was the case appealed?)*

_____

C.   Have you filed other lawsuits in state or federal court otherwise relating to the conditions of your imprisonment?

☐ Yes

☑ No

D.   If your answer to C is yes, describe each lawsuit by answering questions 1 through 7 below.  *(If there is more than one lawsuit, describe the additional lawsuits on another page, using the same format.)*

    1.   Parties to the previous lawsuit

       Plaintiff(s)   _____

       Defendant(s)   _____

    2.   Court *(if federal court, name the district; if state court, name the county and State)*

       _____

    3.   Docket or index number

       _____

    4.   Name of Judge assigned to your case

       _____

    5.   Approximate date of filing lawsuit

       _____

    6.   Is the case still pending?

       ☐ Yes

       ☐ No

       If no, give the approximate date of disposition   _____

    7.   What was the result of the case? *(For example:  Was the case dismissed?  Was judgment entered in your favor?  Was the case appealed?)*

       _____

<u>Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)</u>

**IX.    Certification and Closing**

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

**A.    For Parties Without an Attorney**

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served.  I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:    4 - 17 - 23

Signature of Plaintiff        *Christopher McDaniel*
Printed Name of Plaintiff      Christopher McDaniel
Prison Identification #        720417
Prison Address            (S.T.F) 320 N. Hubbard
                  St. Louis          Mi      48880
                  ___City___      ___State___  ___Zip Code___

**B.    For Attorneys**

Date of signing:    _____

Signature of Attorney      _____
Printed Name of Attorney    _____
Bar Number          _____
Name of Law Firm      _____
Address            _____
                  _____
                  ___City___      ___State___  ___Zip Code___
Telephone Number      _____
E-mail Address        _____

*Ride out*

**Michigan Department of Corrections**
**GRIEVANCE REJECTION LETTER**

DATE:     3/22/2022

TO:      **MCDANIEL**        **720417**          LOCATION:  **JCS**      **MRF**

FROM:    **Grievance Coordinator:  J. Flynn**

SUBJECT:   Receipt/Rejection/Denial for Step I Grievance

Your Step I grievance regarding      **untimely**
was received in this office on  **3/22/2022**      and was rejected due to the following reason:
**The Step I Grievance Office staff have carefully examined the content of your Step I grievance. This examination reveals that you have exceeded your time limits in filing a grievance on issue(s) that concern you, and at the same time provided no reasonable circumstance beyond your control that would have prevented you from filing this grievance in a timely fashion. This office is returing you grievance to you without investigation for these reasons. If you have further questions consult OP 03.02.130, which is available in the institutional library.**

Any future references to this grievance should utilize this identifier:

        **JCS**      /   **2022** /  **03** /  **0342**   /  **28E**

Case 2:23-cv-10923-LVP-EAS   ECF No. 1, PageID.17   Filed 04/26/23   Page 17 of 43

MICHIGAN DEPARTMENT OF CORRECTIONS
**PRISONER/PAROLEE GRIEVANCE FORM**

*mailed*
*Stewart*

3-11-22

4835-4247 10/94
CSJ-247A

Date Received at Step I _____   Grievance Identifier: | | | | | | | | | | | | | | | |

<table>
<tr><td>Be brief and concise in describing your grievance issue.</td><td colspan="6">If you have any questions concerning the grievance procedure, refer to PD 03.02.130 and OP 03.02.130 available in the prison Law Library.</td></tr>
<tr><td>Name (print first, last)</td><td>Number</td><td>Institution</td><td>Lock Number</td><td>Date of Incident</td><td>Today's Date</td></tr>
<tr><td>Chris McDaniel</td><td>730417</td><td>PRF</td><td>4-17-Btm</td><td>3-24-22</td><td>3-26-22</td></tr>
</table>

What attempt did you make to resolve this issue prior to writing this grievance?  On what date? _____
If none, explain why.   On 3/24-26/22 spoke with RUM S. Stewart

State problem clearly.  Use separate grievance form for each issue.  Additional pages, using plain paper, may be used. Four copies of each page and supporting documents must be submitted with this form.  The grievance must be submitted to the Grievance Coordinator in accordance with the time limits of OP 03.02.130.  On 3-24-22 Approx 3:30, I was placed in an untouched dry cell per Deputy warden Clifton at JCS for over 24 hours. Where I was taunted by staff with comments of "Enjoying your stay" "you should pray cause you at her mercy" (meaning R.U.M. Stewart) accompaning Christian Hand gestures touching his forehead, shoulders, stomach, disrespecting my Islamic Beliefs. Also Denying me proper Bathroom & drinking water Rights of once an hour when I'm already having medical issues. Whilt deprived of sleep, I incurred Bruses on my hips, shoulders, leg, arms. I Became sick /loss of conciousness/Headache Then had me transfered to a new level 4 facility to cover-up R.U.M. Stewart & other staffs misconduct & my grievances

I lawsuit played a part in staffs continual Penchant & Retaliitory Behavior

*[Grievant's Signature]*
Grievant's Signature

---

RESPONSE (Grievant Interviewed?  ☐ Yes  ☐ No    If No, give explanation.  If resolved, explain resolution.)

Respondent's Signature _____  Date _____  Reviewer's Signature _____  Date _____

Respondent's Name (Print) _____  Working Title _____  Reviewer's Name (Print) _____  Working Title _____

<table>
<tr><td>Date Returned to Grievant:</td><td colspan="2">If resolved at Step I, Grievant sign here. Resolution must be described above.</td></tr>
<tr><td></td><td>Grievant's Signature</td><td>Date</td></tr>
</table>

DISTRIBUTION:   White, Green, Canary, Pink — Process to Step One; Goldenrod — Grievant

This Grievance will be unable to Recieve it untill June 10,22 in the Mail, plus I have to mail it back, Placed in Disbursment mail June 13,22

MICHIGAN DEPARTMENT OF CORRECTIONS
**PRISONER/PAROLEE GRIEVANCE APPEAL FORM**

4835-4248  5/09
CSJ-247B

Date Received by Grievance Coordinator
at Step II: 6-11-22

Grievance Identifier: JCJ 12, 04.47, 24, 28E

**INSTRUCTIONS:** THIS FORM IS ONLY TO BE USED TO APPEAL A STEP I GRIEVANCE.
The white copy of the Prisoner/Parolee Grievance Form CSJ-247A (or the goldenrod copy if you have not been provided with a Step I response in a timely manner) **MUST** be attached to the white copy of this form if you appeal it at both Step II and Step III.

RECEIVED
SEP 03 2022
Griev.

If you should decide to appeal the Step I grievance response to Step II, your appeal should be directed to:
WRD by 8-15-22. If it is not submitted by this date, it will be considered terminated.

If you should decide to appeal the response you receive at Step II, you should send your Step III Appeal to the Director's Office, P.O. Box 30003, Lansing, Michigan, 48909.

3-99T

| Name (Print first, last) | Number | Institution | Lock Number | Date of Incident | Today's Date |
|---|---|---|---|---|---|
| McDaniel | 720417 | JCS | MRF | 2-24-22 | June 11,22 |

**STEP II — Reason for Appeal** ① my step I Grievance was rejected for being untimely. It was untimely because I was transfer out of J.C.S on or about 2-25-22 two days after the incident & I had to mail my grievance out to J.C.S. P.D.03.02.130(J)(S) The grievance shall not be rejected if their is A vaild reason for Delay; eg., Transfer
② The person responsible for the retalitory transfer from trumped up misconduct charges I couldn't name in step I is Haynie, Bradley, Not D.W clifton

**STEP II — Response**
See the attachment

Date Received by
Step II Respondent: 6-11-22

| M. Floyd | M. Floyd | 7/7/22 | Date Returned to Grievant: 7-8-22 |
|---|---|---|---|
| Respondent's Name (Print) | Respondent's Signature | Date | |

**STEP III — Reason for Appeal** The grievance shouldnt have been rejected per P.D.03.02.13(J)(S) I was transfered facilities and had to mail my grievance back to J.C.S, A prison transfer is a valid Delay. Furthermore Policy Doesn't state that Reason for Delay has to be noted in grievance. Once a grievance is mailed to A facility the coordinator's job is to investigate Delay in filing per Policy 8-31-22 from Sta

**NOTE: Only a copy of this appeal and the response will be returned to you.**

**STEP III** — Director's Response is attached as a separate sheet.

DISTRIBUTION: White – Process to Step III; Green, Canary, Pink – Process to Step II; Goldenrod – Grievant

*Received @*
*Staff Aug 31,22*
*mailed step III Sept 6, 22*
*(101)*

# COOPER STREET CORRECTIONAL FACILITY

## *Step II Grievance Response*

**Grievant:**     McDaniel, Chris #720417 (MRF)

**Grievance #:**  JCS-2022-2021-03-0342-28E

---

**ALLEGATIONS:**
Grievance was received at JCS on 03/22/2022, and Grievant alleges on 2/24/2022 he was placed in a dry cell, taunted by staff, denied bathroom & drinking water of once an hour, and was also denied sleep all to cover up RUM Stewarts misconduct.

**STEP I FINDINGS.**
The step I grievance was rejected due to grievance being filed in an untimely manner which exceeded time limits in filing a grievance.

**FINDINGS:**
Applicable policy directive is PD-03.02.130 "Prisoner/Parolee Grievance" Step I response is accurate and within the guidelines of policy. Grievant did not provide any additional information. **Appeal is denied at Step II**

| | | |
|---|---|---|
| M. Floyd, Warden | 7/7/22 | *M. Floyd* |
| Respondent's Name/Position (Print) | Date | Respondent's Signature |



3-99-T

# STATE OF MICHIGAN
# DEPARTMENT OF CORRECTION
# LANSING

GRETCHEN WHITMER
GOVERNOR

HEIDI E. WASHINGTON
DIRECTOR

## STEP III GRIEVANCE DECISION

Rec #:   137904
28E

| | |
|---|---|
| To Prisoner: | McDaniel         #:  720417 |
| Current Facility: | MRF |
| Grievance Identifier: | JCS-22-03-0342-28E |
| Step III Received: | 9/9/2022 |

Your Step III appeal has been reviewed and considered by the Grievance Section of the Office of Legal Affairs in accordance with PD 03.02.130, "Prisoner/Parolee Grievances".

## THE REJECTION IS UPHELD.

THIS DECISION CANNOT BE APPEALED WITHIN THE DEPARTMENT.   SEP 2 2 2022

**Richard D. Russell, Manager Grievance Section, Office of Legal Affairs**

CC: Warden, Current Facility:    JCS
    Warden,  Grieved Facility:

*Stennet*

*Attack*
*& Retaliation*

**Michigan Department of Corrections**
**GRIEVANCE REJECTION LETTER**

DATE:　　3/22/2022

TO:　　**MCDANIEL**　　**720417**　　LOCATION:　　**JCS**　　**MRF**

FROM:　　**Grievance Coordinator:　J. Flynn**

SUBJECT:　Receipt/Rejection/Denial for Step I Grievance

Your Step I grievance regarding　　**untimely**
was received in this office on　**3/22/2022**　　and was rejected due to the following reason:
**The Step I Grievance Office staff have carefully examined the content of your Step I grievance. This examination reveals that you have exceeded your time limits in filing a grievance on issue(s) that concern you, and at the same time provided no reasonable circumstance beyond your control that would have prevented you from filing this grievance in a timely fashion. This office is returing you grievance to you without investigation for these reasons. If you have further questions consult OP 03.02.130, which is available in the institutional library.**
Any future references to this grievance should utilize this identifier:

**JCS**　　**/**　　**2022 /**　　**03 /　0343**　　**/　28E**

MICHIGAN DEPARTMENT OF CORRECTIONS

4835-4247 10/94
CSJ-247A

# PRISONER/PAROLEE GRIEVANCE FORM

Date Received at Step I _____ Grievance Identifier: | | | | | | | | | | | | | | | |

**Be brief and concise in describing your grievance issue.** If you have any questions concerning the grievance procedure, refer to PD 03.02.130 and OP 03.02.130 available in the prison Law Library.

| Name (print first, last) | Number | Institution | Lock Number | Date of Incident | Today's Date |
|---|---|---|---|---|---|
| | | | | | |

What attempt did you make to resolve this issue prior to writing this grievance? On what date? _____
If none, explain why.

State problem clearly. Use separate grievance form for each issue. Additional pages, using plain paper, may be used. Four copies of each page and supporting documents must be submitted with this form. The grievance must be submitted to the Grievance Coordinator in accordance with the time limits of OP 03.02.130.

_____
Grievant's Signature

RESPONSE (Grievant Interviewed? ☐ Yes ☐ No    If No, give explanation. If resolved, explain resolution.)

_____ _____    _____ _____
Respondent's Signature         Date         Reviewer's Signature         Date

_____ _____    _____ _____
Respondent's Name (Print)   Working Title    Reviewer's Name (Print)   Working Title

| Date Returned to Grievant: | If resolved at Step I, Grievant sign here. Resolution must be described above. | |
|---|---|---|
| | Grievant's Signature | Date |

DISTRIBUTION: White, Green, Canary, Pink — Process to Step One; Goldenrod — Grievant

*mail on June 10,22. Plus I have to mail it Back,*
*(162)*
*Placed in disbursment mail on June 13,22*

MICHIGAN DEPARTMENT OF CORRECTIONS
**PRISONER/PAROLEE GRIEVANCE APPEAL FORM**

4835-4248 5/09
CSJ-247B

Date Received by Grievance Coordinator
at Step II: _____

Grievance Identifier: | J | C | S | 1 | 2 | 2 | 1 | 0 | 7 | 2 | 4 | 2 | 8 | T |

**INSTRUCTIONS:** THIS FORM IS ONLY TO BE USED TO APPEAL A STEP I GRIEVANCE.
The white copy of the Prisoner/Parolee Grievance Form CSJ-247A (or the goldenrod copy if you have not been provided with a Step I response in a timely manner) **MUST** be attached to the white copy of this form if you appeal it at both Step II and Step III.

If you should decide to appeal the Step I grievance response to Step II, your appeal should be directed to: *grev.*
_____ (Usr.) by *5-15-22* If it is not submitted by this date, it will be considered terminated.

If you should decide to appeal the response you receive at Step II, you should send your Step III Appeal to the Director's Office, P.O. Box 30003, Lansing, Michigan, 48909.    *3.5PT*

| Name (Print first, last) | Number | Institution | Lock Number | Date of Incident | Today's Date |
|---|---|---|---|---|---|
| McDaniel | 720417 | JCS | MRF 554T | 2-24-22 | June 11,22 |

**STEP II — Reason for Appeal** My Step I Grievance was untimely because I was transferred two days after the incident & had to mail my Grievance back to J.C.S. P.D.03.02.130 (J)(5) States; The Grievance shall not be rejected if their is a vaild Reason for Delay; eg., transfer

**STEP II — Response**
Su attached

Date Received by
Step II Respondent: 6-17-22

| Respondent's Name (Print) | Respondent's Signature | Date | Date Returned to Grievant: 7-8-22 |
|---|---|---|---|

**STEP III — Reason for Appeal** The grievance shouldn't have been Rejected per policy P.D.03.02.130 (j)(5) I was transfered facility and had to mail my grievance Back to J.C.S. A Prison transfer is a vaild valid Delay. Furthermore Policy Doesn't state that Reason for Delay has to be Noted in grievance. When a grievance is mailed, its up to the coordinator to investigate the Delay per policy

**NOTE:** Only a copy of this appeal and the response will be returned to you.

**STEP III —** Director's Response is attached as a separate sheet.

DISTRIBUTION: White – Process to Step III; Green, Canary, Pink – Process to Step II; Goldenrod – Grievant

Recieved from staff (103)
Aug 31, 22, step III mailed septs 6, 22
6.22

# COOPER STREET CORRECTIONAL FACILITY

### *Step II Grievance Response*

**Grievant:**   McDaniel, Chris #720417 (MRF)

**Grievance #:**   JCS-2022-2021-03-0343-28E

---

**ALLEGATIONS:**
Grievance was received at JCS on 03/22/2022, and alleges on 2/24/2022 RUM Stewart tired to attack him, with what he believes was a broomstick in the back hallway of I-Unit.

**STEP I FINDINGS.**
The step I grievance was rejected due to grievance being filed in an untimely manner which exceeded time limits in filing a grievance.

**FINDINGS:**
Applicable policy directive is PD-03.02.130 "Prisoner/Parolee Grievance" Step I response is accurate and within the guidelines of policy. Grievant did not provide any additional information.  **Appeal is denied at Step II**

| | | |
|---|---|---|
| M. Floyd, Warden | 7/7/2022 | M. Floyd |
| **Respondent's Name/Position (Print)** | **Date** | **Respondent's Signature** |

3-99-T



# STATE OF MICHIGAN

GRETCHEN WHITMER
GOVERNOR

## DEPARTMENT OF CORRECTION
LANSING

HEIDI E. WASHINGTON
DIRECTOR

## STEP III GRIEVANCE DECISION

Rec #:    137907
          28E

| | |
|---|---|
| **To Prisoner:** | McDaniel          #:  720417 |
| **Current Facility:** | MRF |
| **Grievance Identifier:** | JCS-22-03-0343-28E |
| **Step III Received:** | 9/9/2022 |

Your Step III appeal has been reviewed and considered by the Grievance Section of the Office of Legal Affairs in accordance with PD 03.02.130, "Prisoner/Parolee Grievances".

## THE REJECTION IS UPHELD.

THIS DECISION CANNOT BE APPEALED WITHIN THE DEPARTMENT.    SEP 2 2 2022

**Richard D. Russell, Manager Grievance
Section, Office of Legal Affairs**

CC: Warden, Current Facility:
    Warden, Grieved Facility:    JCS

GRANDVIEW PLAZA • P.O. BOX 30003 • LANSING, MICHIGAN  48909

# Exhibits

1) 1st Grievance on Stewart — Retalitory Motive

2) Plaintiff's Misconduct

3) M.D.O.C's Definition of "Insolence" (class II misconduct)

4) M.D.O.C's Definition of "Threatening Behavior" (NON-Bondable)

5) M.D.O.C - Explains a NON-bondable charge (consequences)

6) Procedures on lesser included Charges

7) Plaintiff's Misconduct (Hearing investigation)

8) P.D. 03.03.130 Policy on Mental Abuse (on Staff Retaliation)

9) P.D. 05.05.140 Procedures for transfer with pending Misconduct

10) P.D. 05.01.130 Policy on determining prisoners Actual Security Placement

11) O.P. 05.01.130 •Operating policy on correctly (Actual) placing prisoner at level of security to which he is classified

12) Plaintiff's screening form (security) For transfer)

13) Plaintiffs 2nd Grievance on Stewart — Retalitory Motive

MICHIGAN DEPARTMENT OF
CORRECTIONS

1 of 2 Grievances (Stewart)

CSJ-247S 3/18/2019

## STEP I GRIEVANCE RESPONSE SUPPLEMENTAL FORM
(Use if space on the CSJ-247A is insufficient for a full response by stating on the CSJ-247A "See attached CSJ-247S")

| Prisoner Last Name: | Prisoner #: | Lock/Location: | Grievance #: |
|---|---|---|---|
| McDaniel | 720417 | I-95/JCS | JCS-21-12-1114-03E |

| Prisoner Interviewed: | YES ☒ | NO ☐ | If "NO", Reason: |
|---|---|---|---|
| Extension Granted: | YES ☐ | NO ☐ | If "YES", Enter End Date: | IF "YES", Enter End Date |

**COMPLAINT SUMMARY:**
Grievant alleged that he presented RUM Stewart with a legal order from a judge and she refused to follow the written orders. Grievant alleges RUM Stewart's conduct was unprofessional and stated she wouldn't look at the orders.

**INVESTIGATION SUMMARY:**
Prisoner McDaniel stated that RUM Stewart had came into the unit and made an announcement for legal mail. McDaniel stated he attempted to give RUM Stewart the paperwork to look at but she would not look at the court paperwork. McDaniel stated that the orders from the judge were to present the paperwork to the counselor/ARUS so that he could be shown a video through the facility litigation coordinator. McDaniel admitted that this was taken care of by PC Jackson the next day.

RUM Stewart reported that she did tell McDaniel that she did not have time to look at the paperwork at that time, and told prisoner McDaniel that she was only there to collect any legal mail being sent out. RUM Stewart stated she told prisoner McDaniel that court orders needed to be sent directly to the facility from the courts, as they can be verified that they are actual court orders.

**APPLICABLE POLICY, PROCEDURE, ETC.:**
P. D. Litigation-Department and Employee Responsibilities  Paragraph U states: No action shall be taken on any of these court orders without direction from the Office of Legal Affairs.

**DECISION SUMMARY:**
Based on the above findings, no further action shall be warranted. Prisoner McDaniel 720417 admitted that he had access to watch the video and that he has no further issues, however he would not sign the grievance acknowledging this. Grievance is denied

Exhibit
(1)

| RESPONDENT NAME: | C. Flynn | TITLE: | RUM |
|---|---|---|---|
| RESPONDENT SIGNATURE: | | DATE: | 12/15/21 |
| REVIEWER NAME: | D. Clifton | TITLE: | DW |
| REVIEWER SIGNATURE: | | DATE: | |

**Distribution:** Original - Step I Grievance Coordinator      Copies – 3 To Grievant (1 Prisoner Copy; 1 for Step II filing; 1 for Step III filing)

MICHIGAN DEPARTMENT OF CORRECTIONS

## CONDUCT REPORT

CSJ-228
10/10  4835-3228

| Prisoner Number: 720417 | Prisoner Name: McDaniel | | Facility Code: JCS | Lock: I-95 | Violation Date: 2/24/22 |
|---|---|---|---|---|---|

| Time and Place of Violation: 3:330pm I-Unit Back Hallway | Contraband Removal Record Provided to Prisoner? ☐ Yes  Date _____ ☐ N/A |
|---|---|

Misconduct Class: ☒ I  ☒ II  ☐ III  Charge(s): Threatening Behavior, Disobeing a Direct Order

Describe Violation (If contraband involved, describe in detail; identify any other employee witnesses):
On the above date and time while this writer was conducting rounds in I-Unit, I observed prisoner McDaniel #720417 in the back hallway. I told him he needed to go and remove his loose clothing from his bunk and put it up in his locker. He started asking about when was he going to be given a hearing on the property that officer Simpson took from him. I replied " go clean your bunk off and then we can talk about your hearing" Prisoner McDaniel began to get upset " I then gave prisoner McDaniel a direct order to clean his bunk off. He never complied with the order given ~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~ Yard staff was called into I-Unit to escort prisoner McDaniel #720417 to the control center. Prisoner McDaniels words caused me great alarm.

*20 days L.O.P*

| Reporting Staff Member's Name (Print) C.Stewart | Reporting Staff Member's Signature *C. Stewart* | Date and Time Written 2/24/22 4:00pm |
|---|---|---|

## REVIEW

Location/Verification/Condition of Evidence:

Elevated to Class I at review:
☐ No  ☐ Yes  If "yes", explain reason: _____

### COMPLETE THIS SECTION ONLY FOR REVIEW OF CLASS I MISCONDUCT

Status Pending Hearing:  ☐ Bond  ☐ Segregation  ☐ Confinement to Cell/Room  ☐ Other
☐ Not Bond List  ☐ Bond Revoked (must give reason) _____

| Date and Time Given this Status: | Who Notified in Housing Unit of Status: |
|---|---|

| Hearing Investigator Requested? ☐ No  ☒ Yes | Witnesses Requested?  ☐ No  ☐ Yes If yes, list: |
|---|---|

| Relevant Documents Requested? ☒ No  ☐ Yes If yes, list: | *Exhibit (2)* |
|---|---|

| Additional Comments: | Prisoner Waives 24 Hour Notice of Hearing? ☐ No ☒ Yes Hearing Date: |
|---|---|

| Reviewing Officer's Name (Print) | Reviewing Officer's Signature | Review Date and Time |
|---|---|---|

| I have received a copy of this report. My signature does not necessarily mean that I agree with the report. ☐ Prisoner refused to sign. Copy given to prisoner. | Prisoner's Signature | Date |
|---|---|---|

### WAIVER OF CLASS II OR III HEARING

| I understand I have a right to a hearing. I waive my right to a hearing and plead guilty to all charges. I also waive my right to appeal and accept the sanctions imposed. | Prisoner's Signature | Date |
|---|---|---|

### SANCTIONS IMPOSED (Hearing Investigator enters begin and end dates for Class II misconducts)

| ___ Days Toplock | Begins: | Ends: | ☐ Counseling/Reprimand (Class II only) |
|---|---|---|---|
| ___ Days Loss of Privileges | Begins: | Ends: | ☐ $ ___ Restitution (Class II only) |
| ___ Hours Extra Duty | Begins: | Ends: | |

Property Disposition If Applicable:

| Employee Accepting Plea and Imposing Sanction (Print) | Employee's Signature | Date |
|---|---|---|

| Hearing Investigator's Name (Print) | Hearing Investigator's Signature | Date |
|---|---|---|

Distribution: Prisoner; Counselor File; Record Office File (Class I and II); Central Office File (Class I); Hearing Investigator (Class I & Class II)

**ALJ/HEARING OFFICER:**
1. "P" was making bets or arranging for others to do so.

OR

** 1. Items known to be gambling paraphernalia were found.
2. They were in "P's" possession or area of control.

**Example:**
Possession of dice, betting slips, point spreads, items used as counters in a card game, and similar items.

**Insolence** (426)
**Words, actions, or other behavior which is intended to harass, degrade, or cause alarm in an employee.**

**Reporting Officer:**
1. What did "P" say or do?
2. Who was "P's" words/actions directed at?
3. How was it determined whom "P" directed his/her words or actions to (e.g., distance, eye contact, etc.)?

**ALJ/HEARING OFFICER:**
1. "P" said or did something which was intended to harass, degrade or alarm an employee.
2. "P" intended his or her behavior to so affect the employee.

**Example:**
Using abusive language to refer to an employee; writing about or gesturing to an employee in a derogatory manner.

**Interference with the Administration of Rules** (423)
**Acts intending to impede, disrupt, or mislead the disciplinary process for staff or prisoners, including failure to comply with a loss of privileges sanction imposed as a result of a misconduct guilty finding.**

**Reporting Officer:**
1. What were "P's" actions?
2. How did that interfere with the discipline process?

OR

1. "P" broke toplock without authorization? How?
2. When was the toplock given? By whom? For what dates?
3. If non-bond toplock, how and when was "P" notified of non-bond toplock status?

OR

1. "P" failed to comply with a loss of privileges sanction for misconduct?



Exhibit
(3)

| DOCUMENT TYPE PD ATTACHMENT | EFFECTIVE DATE 04/09/2012 | NUMBER 03.03.105A | PAGE 3 OF 3 |
| --- | --- | --- | --- |

045

\* Smuggling
\*Bringing or attempting to bring any unauthorized item into or out of a correctional facility or a specialized area or unit within a facility such as segregation.

Receiving jewelry, shoes, etc. during a visit.

034
(Alcohol)
039
(Marijuana)
040
(Heroin/morphine)
041
(Cocaine)
042
(Other substance)
043
(Drug test refusal)
044
(Narcotics paraphernalia)
046
(Tobacco product)

Substance Abuse
Possession, use, selling, or providing to others, or being under the influence of, any intoxicant, inhalant, controlled substance (as defined by Michigan statutes), alcoholic beverages, marijuana or any other substance which is used to cause a condition of intoxication, euphoria, excitement, exhilaration, stupefaction, or dulling of the senses or nervous system; unauthorized possession or use of prescribed or restricted medication; possession of narcotics paraphernalia; failure or refusal to voluntarily submit to substance abuse testing which is requested by the Department for the purpose of determining the presence in the prisoner of any substance included in this charge; possession of a tobacco product.

Narcotics paraphernalia includes such items as marijuana and "crack" pipes, needles and syringes which are used to administer narcotics, but does not include such items as "roach clips" and cigarette papers; failure to return prescribed or restricted medication after its authorization date has expired.

012

\* Threatening Behavior
\*Words, actions, or other behavior which expresses an intent to injure or physically abuse another person. Such misconduct includes attempted assault and battery.

Threat of sexual assault made by one prisoner to another prisoner; writing threatening letter to another person; threat made to a third person.

\*   Nonbondable Charge

NOTE: A Class II misconduct that occurred during or in connection with a visit shall be elevated to a Class I misconduct at the time of review. Any other Class II misconduct may be elevated to a Class I misconduct by the reviewing officer based on the seriousness of the specific facts as stated in the misconduct or the circumstances of the misconduct.  If elevated, the hearing officer shall change the  first digit of the misconduct code from a "4" to a "0" (for example,  420 changed to 020 if elevated).

Exhibit
(4)

DU... E LIBRARY

commission of a violation.  "Accomplice" does not include merely having knowledge of a misconduct as there is no "duty to report" that can be justified pursuant to statute or administrative rule.

B.   **ATTEMPT** – A prisoner intends to commit a specific rule violation <u>and</u> does something towards committing it, even though s/he may not have succeeded.

C.   **CONSPIRACY** - A prisoner intends to commit a specific violation and agrees with at least one other person to commit the violation.

## Non-bondable and Bondable Charges

Misconduct charges are also identified as **non-bondable** and **bondable** charges. A **non-bondable** misconduct is a misconduct that has been identified by the Department as:

1.   Actions by the prisoner that are considered a threat to the safety or security of others or to property; or
2.   Actions that are so disruptive to normal prison operations that they require the charged prisoner to be confined separately from the institution's general population pending the outcome of the misconduct hearing.

This means that at review, the reviewing employee shall order a prisoner charged with a non-bondable misconduct to be confined in temporary segregation or, if a temporary segregation cell is not available, on toplock (confinement to cell) pending the hearing. The Warden may allow a prisoner charged with a **non-bondable** offense to remain on bond status if it is determined that this will not present a threat to the safety of others or the security of the facility.

A bondable misconduct is a misconduct that does not require confinement from general population pending the misconduct hearing.  However, the reviewing employee may revoke bond and order a prisoner charged with a bondable misconduct to be confined in temporary segregation or, if a temporary segregation cell is not available, confined pending the hearing. Revoking bond should only apply if there is a reasonable basis to believe that failure to do so would constitute a threat to the security or good order of the facility. **Bond may not be revoked for a Class II misconduct unless the charge is elevated to a Class I misconduct by the reviewing employee at review.** Elevating a Class II misconduct to a Class I misconduct does not automatically require the reviewing employee to revoke bond. Revoking bond is a management tool left to the discretion of the reviewing employee or at the discretion of the facility administration and should only be used for the reasons outlined above for non-bondable misconduct charges.  **SEE MORE ON ELEVATION OF CHARGES IN PARAGRAPH D BELOW.**

## Class I Misconduct Hearings, MCL 791.251 et, seq., LARA Administrative Rule 792.11902-903, and other hearings

For Class I violations, prisoners have the rights described in the Prisoner Discipline policy, and in LARA Administrative Rule 792.11902-3.  Those rights closely follow the principles set forth in <u>Wolff</u> v. <u>McDonnell</u> 418, U.S. 539 (1974), and PA 140 of 1979 and those outlined in MCL 791.251 et seq.

MCL 791.251 <u>et</u> <u>seq</u>. also created the Hearings Division (now known as the Rehearings Section) within the Department of Corrections.  This Section is responsible for overseeing the Department's prisoner discipline process and responding to appeals of "hearings conducted on a prisoner which may result in the loss by a prisoner of either a right or

Exhibit T (5)

documented, either in writing that the <u>specific charge is elevated,</u> or by checking the appropriate section of the Misconduct Report that documents the misconduct is being elevated to a Class I.

That a misconduct has been elevated must be documented on the Misconduct Report. However, the reason for elevation on the misconduct report is for the reviewing officer to provide the Warden with written documentation as to why the reviewing officer feels the elevation is appropriate. Pursuant to the prisoner discipline policy, it is the Warden who is responsible for monitoring this process. The reason for elevation is not provided to give the prisoner notice of why the misconduct is elevated as this is not a due process requirement. Neither the decision to elevate nor the reason can be challenged by the prisoner. The Warden is responsible for monitoring elevations of misconducts to assure appropriateness and consistency within the facility.

2.   Lesser Included Charges

Many Class I and Class II misconducts include other less serious charges.  A lesser included charge would contain some, but not all, elements of the greater charge.  The following are some examples:

| CLASS I MISCONDUCT CHARGE | LESSER INCLUDED CHARGE |
| --- | --- |
| Escape | Out of Place |
| Incite to Riot or Strike; Rioting or Striking | Creating a Disturbance |
| Threatening Behavior | Insolence |

If a prisoner is charged with misconduct and the evidence does not support the violation charged, but does establish a lesser included charge, the ALJ/hearing officer has the authority to find the prisoner guilty of the lesser included charge. The prisoner's consent is not needed to do this since the lesser charge is necessarily part of committing the more serious charge and thus proper notice was given in the misconduct report.  Refer to paragraph **D. Responsibilities of the ALJ – Class I Hearings** in this document for the full description of ALJ duties and Responsibilities with respect to modifying charges.

3.   Duplicative Charges

At the hearing, any duplicative charges MUST be combined, i.e., the prisoner may not have two separate findings of guilt for a single act of misconduct.  For example, "creating a disturbance" and "incite to riot/strike" should be combined if, by inciting a riot, the prisoner created a disturbance. Also, smuggling in a substance such as marijuana should not be two separate charges of smuggling and substance abuse when it is the marijuana the prisoner is caught smuggling or attempting to smuggle. It is sometimes difficult to recognize duplicative charges, and the ALJ/hearing officer must carefully analyze the incident to determine if more than one act of misconduct has occurred.  There is no requirement that the ALJ/hearing officer choose the most serious of the duplicative charges in all situations. Rather, the ALJ/hearing officer should choose the most appropriate charge.

# PURPOSE AND MEANING OF "DUE PROCESS"

The Constitutions of the United States and Michigan require that certain due process procedures be followed whenever any part of the government wants to take away a person's life, liberty or property.  The type of procedures which must be followed depends on the nature of the

Exhibit (6)

MICHIGAN DEPARTMENT OF CORRECTIONS
## CLASS I MISCONDUCT HEARING REPORT

CSJ-240B
Rev. 10/10

| Prisoner Number | Prisoner Name | | Facility Code | Lock | Violation Date |
|---|---|---|---|---|---|
| 720417 | **McDaniel** | | MRF | 1-17-B | 02/24/2022 |

| Charge(s) |
|---|
| **Threatening Behavior, Disobeying a Direct Order 1530** |

| If Charge Changed by Hearing Officer | Plea | |
|---|---|---|
| **Threatening Behavior to Insolence** | ☐ Guilty | ☒ Not Guilty |

| Misconduct Report Read to and Discussed with Prisoner | ☒ (check if applies) | No Hearing Investigation Requested |
|---|---|---|
| Hearing Investigation Read to and Discussed with Prisoner | ☒ (check if applies) | ☐ (check if applies) |

### EVIDENCE/STATEMENTS IN ADDITION TO MISCONDUCT REPORT

Prisoner is present and the hearing is conducted via web cam. I confirmed that Review was completed within 24 hours and that 24-hour notice was given to the prisoner. I read the misconduct report to the prisoner, and prisoner pleads NOT GUILTY to both charges. The following record was reviewed:
1)      Misconduct report (1 pg)
2)      Hearing investigation report (1 pg)
3)      Prisoner's misconduct history (2 pg) (marked confidential - see findings)
PRISONER TESTIMONY: Prisoner confirms that he heard and understood the C/O's order to clear his bunk off. When asked if he followed it, prisoner explains, "Before she had said anything to me, I had checked my area of control because there was a male counselor in our unit who went through our unit. And the only thing I had was a soap that had been on my locker," explaining that "my area of control had already been clean." Prisoner continues, "Her order wasn't given to me prior, I approached her about my hearing. And as I was asking her, she said it was the other PC, and I said 'He just sent me to you,' and then she said 'Go clean up your area,' and there was nothing on my bed because I had just cleaned it up." Prisoner adds, "They were playing ping pong about who was going to do the hearing." -CONTINUED ON PAGE TWO-

### REASONS FOR FINDINGS

CONFIDENTIAL EVIDENCE: Exhibit 3 (Prisoner's misconduct history) is marked confidential to preserve facility security and privacy with regard to prisoner's sanction records.  To release would result in disseminating private information and prisoner's misconduct history. Exhibit 4 (Video footage) is marked confidential to preserve facility security/safety and protection of camera capability. To release this information would permit prisoners to learn of and defeat security measures and jeopardize prison security.

DUE PROCESS – RELEVANCE: Irrelevant, immaterial, or unduly repetitious evidence may be excluded. MCL 791.252(g); R 792.11902(3)(d). As noted below, the prisoner admits to the facts giving rise to the lesser-included charge of Insolence, as well as the charge of Disobeying a Direct Order. Consequently, I find that any additional testimony from staff is irrelevant, as there are no remaining factual issues in dispute. NO DUE PROCESS VIOLATION FOR ABSENCE OF IRRELEVANT WITNESS TESTIMONY.

-CONTINUED ON PAGE TWO-

### PROPERTY DISPOSITION (for contraband see PD 04.07.112)

### FINDINGS

| Charge No. 1 | ☒ Guilty | ☐ Not Guilty | ☐ Dismissed | Reporting Code | 426 |
|---|---|---|---|---|---|
| Charge No. 2 | ☒ Guilty | ☐ Not Guilty | ☐ Dismissed | Reporting Code | 420 |
| Charge No. 3 | ☐ Guilty | ☐ Not Guilty | ☐ Dismissed | Reporting Code | |
| Charge No. 4 | ☐ Guilty | ☐ Not Guilty | ☐ Dismissed | Reporting Code | |

### DISPOSITION (select one or more) (Toplock & LOP Sanctions End at 6:00 am)

| | Begins | Ends | | |
|---|---|---|---|---|
| _____ Days of Detention | | | _____ Days Credit | |
| _____ Days Top Lock | | | _____ Hours Extra Duty | |
| 20 Days Loss of Privileges | 03/05/2022 | 03/25/2022 | $ _____ Restitution | |

| Misconduct Hearing Report personally handed to Prisoner by Hearing Officer on this date: _____ (Check if Applies) ☐ | Hearing Report given to Staff Member by Hearing Officer for Delivery to Prisoner this date: **3/11/2022** (Check if Applies) ☒ |
|---|---|
| Date of Hearing **03/03/2022** | Name of Staff Member   **HI Conyers** |

| Hearing Officer's Name | Hearing Officer's Signature | Date |
|---|---|---|
| **ALJ Eriksson 077** | /s/ ALJ Eriksson 077 | **03/11/2022** |

DISTRIBUTION  ☐ Record Office   ☐ Central Office File   ☐ Prisoner   ☐ Counselor File   ☐ Hearing Investigator

Exhibit (7)

MICHIGAN DEPARTMENT OF CORRECTIONS

CSJ-240D  12/90
4835-4243

| **CLASS I MISCONDUCT** | | **HEARING REPORT – Continuation Page No.** | **2** |
|---|---|---|---|

(Type of Hearing)

| Prisoner Number | Prisoner Name | | Institution | Violation/Notice Date |
|---|---|---|---|---|
| 720417 | McDaniel | | MRF | 2/24/2022 |

EVIDENCE/STATEMENTS IN ADDITION TO MISCONDUCT REPORT CONT.:

Prisoner says that he "most definitely" told staff "You better not fuck with me," but explains "that's not a threat, that was for my protection. When I told her my area was clean, she said 'I'm going to fuck your shit up.' And that's when I said 'You better not fuck with me,' when she was charging at me with a broom in her hand." Prisoner then references the video footage. Prisoner is asked to confirm the accuracy of the hearing investigation report. Prisoner confirms it is accurate and that he requested the hearing investigator and made a statement and requested witness testimony. Prisoner says that PC Williamson was the "male PC" he referenced earlier in his testimony, and says that C/O Ayers was the "unit officer standing there during the entire confrontation." Prisoner says that "HI Flynn saw me right before they rode me out and put me on the bus, and I signed some paperwork asking for the camera and witness statements from these people." The prisoner is informed by this ALJ that the hearing will conclude without a finding, and that the findings, disposition of the hearing and any applicable dates will be provided to him on that same day, via the Hearing Investigator, upon review of the applicable video footage by this ALJ. Prisoner understands, and the hearing concludes. The following record additional was reviewed:

4)    · Video footage (marked confidential - see findings)
VIDEO: Video was watched outside of prisoner's presence, and is summarized as follows: Video footage shows staff addressing the prisoner, but there are multiple other prisoners in the area, and it is not clear to this ALJ when/if the C/O carried a broom, let alone "charged" the prisoner as he describes.

Upon further review of the record, including the aforementioned video footage, the Hearing Investigator is advised of the findings, and will inform the prisoner of the disposition of the hearing prior to the delivery of the Hearing Report to him upon its completion.

REASONS FOR FINDINGS CONT.:
PREPONDERANCE OF THE EVIDENCE: The standard of proof in this administrative hearing is preponderance of the evidence, so the side that best accords with reason, has the greater weight, is more likely than not.  It is not beyond a reasonable doubt.  Direct and circumstantial evidence can be weighed to determine a case.  Circumstantial evidence is "evidence of an indirect nature, that is, facts or circumstances from which other facts or circumstances may be shown." MDOC HEARINGS HANDBOOK (IV)(A)(3).

THREATENING BEHAVIOR: Per MDOC PD 03.03.105, Attachment A, the charge is defined as "Words, actions, or other behavior which expresses an intent to injure or physically abuse another person. Such misconduct includes attempted assault and battery." LESSER INCLUDED CHARGE: If the evidence does not support the particular violation charged but does establish a lesser included violation, the ALJ has the authority to find the prisoner guilty of the lesser included violation, even if it is a different class of misconduct.  MDOC PD 03.03.105(CC). INSOLENCE: Per MDOC PD 03.03.105, Attachment B, the charge is defined as "Words, actions, or other behavior which is intended to harass, degrade, or cause alarm in an employee."

At the hearing, the prisoner admits to telling staff, "Don't fuck with me. I'm telling you, you better not fuck with me," but the prisoner denies that he was threatening staff at the time. Consistent with the prisoner's defense, the Misconduct Report only alleges that the prisoner caused staff "great alarm." But "great alarm" is not an indication of intent to harm or physically abuse, but is instead and element of the lesser-included charge of Insolence. Likewise, although the prisoner yelled the words in question, there is no other indicator of what the prisoner did at the time that would indicate the prisoner's words expressed an intent to injure or physically abuse. Consequently, I find that the lesser-included charge of Insolence is appropriate. LESSER INCLUDED CHARGE OF INSOLENCE IS UPHELD.  -CONT ON PAGE THREE-

| HEARING OFFICER'S NAME & CMIS CODE (Typed) | Copy of Hearing Report personally handed to Prisoner by Hearing Officer this date | |
|---|---|---|
| ALJ Eriksson 077 | | (check if applies) ☐ |
| HEARING OFFICER'S SIGNATURE | Copy of Hearing Report Given to Staff Member by Hearing Officer for Delivery to Prisoner this date 3/11/2022 | (check if applies) ☒ |
| /s/ ALJ Eriksson 077 | | |
| | Date of Hearing | (Name & Clock No. of Staff Member) |
| | 3/3/2022 | HI Conyers |

DISTRIBUTION:  White – Institution;  Green – Central Office;  Canary – Prisoner;  Pink – Visitor/Counselor;  Goldenrod – Hearing Investigator

| DOCUMENT TYPE<br>POLICY DIRECTIVE | EFFECTIVE DATE<br>04/01/2022 | NUMBER<br>03.03.130 | PAGE 2 OF 3 |
|---|---|---|---|

E. All prisoners shall be provided wholesome and nutritionally adequate meals prepared and served as set forth in PD 04.07.100 "Offender Meals and Food Quality Assurance." Prisoners shall be permitted to eat in group dining facilities, unless they are restricted for security, medical, or behavior reasons. During meal periods, prisoners shall be permitted to talk using normal conversational tones.

F. All general population prisoners shall be afforded the opportunity for at least two hours per day indoor or outdoor recreation (i.e., yard/dayroom), unless restricted for medical or security reasons (e.g., serving disciplinary sanctions, designated as STG II, mobilization), including due to potentially dangerous weather conditions (e.g., lightning; low wind chill factor). Decisions to restrict activities due to extreme weather conditions or other urgent circumstances shall be made by the Administrative Duty Officer with notification to the Assistant Deputy Director (ADD). Segregation prisoners shall be permitted out-of-cell movement as set forth in PD 04.05.120 "Segregation Standards."

HEALTHCARE

G. Healthcare, including psychological services, shall be available to prisoners consistent with contemporary standards of medical practice in the community, as set forth in PD 03.04.100 "Health Services." Healthcare shall be available, accessible, and organized for delivery in a humane, cost-effective, and efficient manner.

H. All seriously ill or injured prisoners shall receive prompt medical attention as set forth in PD 03.04.125 "Medical Emergencies." Appropriate staff shall be informed of any special needs of prisoners due to physical or mental problems.

PROTECTION FROM MENTAL OR PHYSICAL ABUSE

I. To prevent abuse of prisoners, the following safeguards shall apply:

1. Facility staff shall identify prisoners who are assaultive or predatory. Such prisoners shall be placed at the level of security necessary to control such behavior.

2. The cell or room assignment of prisoners shall be regulated to prevent manipulation by other prisoners. Cell or room changes should be made only on the basis of program need, facility security, or for good order of the housing unit, as determined by housing staff. A prisoner shall be placed in a single occupancy cell when necessary to ensure the safety of the prisoner or others.

3. Prisoners shall be provided reasonable safety from assaults. This shall include adequate staff supervision, as set forth in institutional staffing charts, and the strict control of tools and weapons.

4. No prisoner or group of prisoners shall be given control or authority over other prisoners.

5. Activity against a prisoner that may constitute a felony shall be reported to appropriate law enforcement authorities. In addition, prisoners shall be subject to the Department disciplinary process in accordance with PD 03.03.105 "Prisoner Discipline."

6. Staff shall not use or engage in, and shall discourage through appropriate means any personal use of, derogatory, demeaning, humiliating, or degrading actions or language toward others. It is a violation of Department work rules for staff to engage in sexual harassment or sexual misconduct with a prisoner, as defined in the Employee Handbook. **Staff also are prohibited from retaliating against a prisoner who refuses to participate in prohibited staff conduct or who files a complaint or cooperates in an investigation of prohibited staff conduct.** Staff engaging in sexual harassment, sexual misconduct, or other prohibited conduct shall be subject to discipline in accordance with PD 02.03.100 "Employee Discipline" and in accordance with PD 03.03.140 "Sexual Abuse and Sexual Harassment of Prisoners - Prison Rape Elimination Act (PREA)" as appropriate.

J. Prisoners shall not be subjected to personal abuse from staff. Staff shall act objectively and with

Exhibit (8) (1of2)

| DOCUMENT TYPE | EFFECTIVE DATE | NUMBER | |
|---|---|---|---|
| POLICY DIRECTIVE | 04/01/2022 | 03.03.130 | PAGE 3 OF 3 |

restraint when in conflict with a prisoner or under threat of personal danger.  Facility authorities shall be alert to identify staff members unable to properly respond to these pressures to ensure corrective action.  Allegations of use of force in violation of PD 04.05.110 "Use of Force" shall be investigated and appropriate action taken in accordance with PD 02.03.100 "Employee Discipline."

K.  Staff have a responsibility to protect the lives of both employees and prisoners, provide for the security of the State's property, prevent escape, and maintain good order and discipline.  Thus, they are sometimes required to act under circumstances where the use of physical restraint or force is required.  The following are prohibited:

1.  Corporal punishment.

2.  Deprivation of clothing, light, ventilation, heat, balanced diet, or hygienic necessities, or subjection to excessive noise, except as set forth in PD 04.05.120 "Segregation Standards" and PD 04.06.115 "Suicidal and Self-Injurious Behavior."

3.  Any act or lack of care, whether by willful act or neglect, that injures or significantly impairs the health of any prisoner.

4.  Willful infliction of mental distress, degradation, or humiliation.

5.  Willful damage to prisoner property.

L.  Discrimination based on personal prejudices as to race, religion, color, national origin, age, sex, sexual orientation, gender identity, height, weight, marital status, or disability is prohibited.  This includes sexual harassment.  This also includes discrimination in the form of paternalism or expecting less than full responsibility from members of minority, ethnic, or racial groups, or from either sex.

M.  Prohibited forms of discrimination shall not serve as the basis for prisoner programming, including work and school assignments, or other administrative decisions.

N.  The Administrator of the Training Division shall ensure training is available to all staff in the areas of race relations, the understanding of cultural differences, and sexual equality.

PROCEDURES

O.  Operating procedures are not required for this policy directive.

AUDIT ELEMENTS

P.  A Primary Audit Elements List has been developed and is available on the Department's Document Access System (DAS) to assist with self-audit of this policy pursuant to PD 01.05.100 "Self-Audits and Performance Audits."

APPROVED: HEW 03/30/2022

Exhibit (8) (2of2)

| DOCUMENT TYPE | EFFECTIVE DATE | NUMBER | |
|---|---|---|---|
| POLICY DIRECTIVE | 08/01/2022 | 05.01.140 | PAGE **2** OF **7** |

E.  Only the CFA Deputy Director or designee shall approve placement in protective housing. Except as provided in Paragraph F, all prisoner transfers require approval from the CFA Deputy Director or designee. Subject to the eligibility criteria set forth in this policy directive, including its attachments, reception facility staff may transfer prisoners to security Level I through IV.

F.  A Warden of a facility with multiple security levels may authorize the placement of a prisoner in another security level within that facility. A Warden who supervises more than one facility may authorize the transfer of a prisoner between those facilities.

G.  Staff shall ensure that appropriate files and electronic records are reviewed to identify any Special Problem Offender Notices (SPONs), or any medical and mental health needs, of a prisoner transferring to another facility prior to the transfer. Appropriate Bureau of Health Care Services (BHCS) staff shall notify the Warden or designee if a prisoner has a medical condition that necessitates any special travel restrictions or needs (e.g., transported lying down). The Warden or designee shall ensure this information is listed on the appropriate transportation detail. Prisoners with special health care needs shall be transferred in accordance with the BHCS Onsite Health Care Service Grid.

H.  A Basic Information (CSX-104) form shall be used at the Charles E. Egler Reception and Guidance Center (RGC) when transferring prisoners who are new commitments. Parole violators, and all other facility transfers shall use a Transfer Order (CSJ-134). Transfer Orders shall include the purpose of transfer, program information, SPON information, Security Threat Group (STG) designation, assaultive and property risk designations, current security screening designations, special handling (e.g., medical and ADA accommodations), and any pertinent information regarding special precautions that are to be taken with that prisoner. A Transfer Order shall not be used to move a prisoner to another security level within the same facility.

I.  The appropriate Record Office, Counselor, and Education files and health records shall accompany transferring prisoners.

J.  Ordinarily, a pending misconduct hearing, administrative hearing, Parole Eligibility/Lifer Review Report (CSJ-123), COMPAS, or Time Review and Disposition (CSX-482) is to be completed prior to a prisoner's transfer. If this is not possible, the sending facility shall immediately notify the receiving facility of the need to conduct the hearing(s) and/or complete any outstanding report(s), and immediately forward the appropriate documents to the receiving facility. Staff at the receiving facility shall ensure the hearing(s) and/or any outstanding report(s) are completed within time limits set forth in relevant policies and procedures.

K.  A prisoner scheduled for a Parole Board interview, a parole violation hearing, or core programming shall not be transferred to another facility unless the transfer is unavoidable and is approved by the CFA Deputy Director or designee. The Administrator of the Office of the Parole Board shall ensure that Wardens or their designees are provided notice of interviews and hearings scheduled at their respective facilities. The sending staff shall notify the Office of the Parole Board as soon as it is known that the prisoner must be transferred.

L.  Sending staff shall notify receiving staff in advance of all pending prisoner transfers. Transfer information shall include the number of transferring prisoners, identity of prisoners requiring segregation placement or special handling for security, court appearance, or medical reasons, and anticipated logistical problems such as missing property or records.

PRISONER REENTRY IN-REACH FACILITIES

M.  In-reach facilities offer specialized programming, assessment, and transition services to assist prisoners in their successful transition into the community.

N.  Prisoners who are granted a parole contingent upon completion of prisoner reentry in-reach services, and prisoners who have been determined to need in-reach services prior to discharge, may be transferred to the in-reach facility servicing the county that the prisoner will parole or discharge, as identified in PD 03.02.101 Attachment A "In-Reach Facilities," or may receive similar services and planning at their current facility as determined by the Offender Success. If the prisoner is subsequently denied parole, the Warden or designee may discontinue providing in-reach services to the prisoner. In such cases, the Warden or designee shall

Exhibit-1q

| DOCUMENT TYPE | EFFECTIVE DATE | NUMBER | |
|---|---|---|---|
| POLICY DIRECTIVE | 10/31/2022 | 05.01.130 | PAGE 3 OF 4 |

## DETERMINING TRUE SECURITY LEVEL

J.    A prisoner's true security level is normally the higher of the confinement or management level on the appropriate screening form. However, if the screener does not believe that the higher of the confinement or management level accurately reflects the prisoner's security requirements, the true security level may be increased or decreased through a departure. The reason for the departure shall be indicated on the appropriate screening form and, for male prisoners, shall be in accordance with the specific requirements set forth in OP 05.01.130 "Completion of Security Classification Forms - For Male Prisoners." A departure shall not be used to meet bed space or programming needs or for any other reason that is unrelated to the prisoner's security requirements.

K.    All departures require the approval of the CFA Deputy Director or designee except for the following that may be approved by the Warden or designee subject to Paragraphs O through R:

1.    A departure to Level I for a prisoner granted a parole as indicated on a Parole Board Notice of Action. However, if the parole is subsequently suspended, continued placement in Level I requires the approval of the CFA Deputy Director or designee.

2.    A departure that will result in a prisoner's placement within the same facility or transfer to another facility under that Warden's supervision.

3.    A one level departure decreasing the prisoner's true security level.

4.    At a reception facility, a one level departure to Level I through IV.

## DETERMINING ACTUAL PLACEMENT LEVEL

L.    Prisoners shall normally be placed consistent with their true security level. However, there may be reasons unrelated to security (e.g., medical/mental health needs; lack of bed space at the appropriate level) that preclude such placement. When that occurs, the prisoner may be waived to a higher or lower actual placement level. The reason for the waiver shall be indicated on the appropriate screening form and, for male prisoners, shall be in accordance with the specific requirements set forth in OP 05.01.130 "Completion of Security Classification Forms - For Male Prisoners."

M.    All waivers require the approval of the CFA Deputy Director or designee except for the following that may be approved by the Warden or designee subject to Paragraphs O through R:

1.    A waiver that will result in a prisoner's placement within the same facility or transfer to another facility under that Warden's supervision.

2.    A one level waiver decreasing the prisoner's true security level unless a one level departure has been approved pursuant to Paragraph K.

3.    At a reception facility, a one level waiver to Level I through IV unless a one level departure has been approved pursuant to Paragraph K.

N.    Prisoner placement shall be in accordance with PD 05.01.140 "Prisoner Placement and Transfer."

## OTHER CONSIDERATIONS

O.    Prisoners designated as security threat group members or, unless an exception is approved by the appropriate ADD, those with designations pending shall be classified to a security level consistent with the requirements set forth in PD 04.04.113 "Security Threat Groups."

P.    Prisoners determined to require placement in single-cell housing in a Level IV or V facility due to the prior use of force or the threat of force to engage in, or attempt to engage in, abusive sexual contact or a non-consensual sexual act with a victim of the same sex shall not be classified to Level I or II.

Q.    Prisoners serving a sentence for an escape that occurred within the preceding five years, or with a

EXhibiT (10)

| TYPE | EFFECTIVE DATE | NUMBER | |
|---|---|---|---|
| ~~ATING~~ PROCEDURE | 07/16/2012 | 05.01.130 | PAGE 5 OF 6 |

9. This means reached age 26 since the last screening. In other words, credit can only be given once on this item, and is not be given again on future screening.

10. A prisoner can earn one point for GED and one point for vocational certificate(s) during the same review. However, no more than one point will be given for each of these areas. Completion of counseling and psychotherapy does not count. The only vocational certificates to be awarded credit are those instructed by the Department.

As to the counting of vocational certificates, a problem exists in that some facilities give such certificates for completion of subcomponents of courses, while others do not; this has the potential for inequity. To resolve this, no points will be given for vocational certificates as long as the prisoner continues to be enrolled in the same vocational area (such as auto mechanics, for example). At such time as the prisoner has terminated training in that area, if any certificates have been earned, a point shall be given at the next review. If the trade is resumed in the future, no additional points should be given.

MRF
LIBRARY

**New Management Level (Box #2)**

N. Subtract subtotal favorable behavior (C) from subtotal unfavorable behavior or (B) and enter the score in total changes (D). If a minus number, enter the minus number. Then add the score in total changes (D) to previous management score (A) and enter in new score (E). If the score is a 0 or a negative number, enter 0. If the score is greater than 35, enter 35. Determine the new management level using the range of scores indicated on the form. Enter the level in the new management level (Box #2).

## SECURITY CLASSIFICATION

### True Security Classification Level (Box #3) - Departure Box

O. Select the higher of the confinement level/management level from box #1 or box #2. Enter that number in the True Security Classification box #3. If it is felt, however, that this is not appropriate for this particular prisoner for whatever reason having to do with the security needs of that prisoner, enter the level which is deemed to be appropriate and the reason for this difference. True security classification decreases of one level can be approved by the institution - the security classification committee or their surrogates as designated by the institution head. (For approvals needed when actually transferring prisoners to other facilities, see "Actual Placement" and PD 05.01.140.) The main point to understand is the numeral placed in this "True Security" box is the level of security the screener feels is most appropriate for this prisoner whether or not the prisoner can be placed there at this moment. In other words this is not necessarily the same level where the prisoner is or will be placed.

P. The prisoner has a parole ordered in which case s/he may be classified as Level I, with that given as a reason stated in box #3.

Q. Box #3 requires proper signature authorizing the prisoner's true security level, in accordance to PD 05.01.130. A signature is still required by the Warden or designee if the True Security Level is the same as the higher of box #1 or box #2.

### Actual Placement Level (Box #4) - Waiver Box

R. It is our intent to place the prisoner at the level of security to which he has been classified. It may happen that a prisoner is classified to a particular level of security using these forms, but for reasons not relating to security, the prisoner must be placed in some other level. An example would be an appropriately classified Level I prisoner who must be kept in Level IV to have access to medical or psychiatric care. Level I would still be entered in the security box, but in the placement box, enter Level IV with the explanation "access to medical/mental health treatment". This may also happen because of lack of bed space. If an appropriately classified Level II prisoner is being sent to Level I because of lack of bed space, the security box remains Level II but the placement box will read Level I, "lack of bed space".

E
x
h
i
b
i
T

(11)

MICHIGAN DEPARTMENT OF CORRECTIONS

CSJ-481
REV 02/12

**SECURITY CLASSIFICATION SCREEN - REVIEW - Male Prisoners Only**

| Prisoner Name (last, first middle): MCDANIEL, CHRISTOPHER DARNELL | Prisoner Number: 720417 | Institution: COOPER STREET FACILITY | Date Entered: 02/04/2022 |
|---|---|---|---|
| Date: 02/25/2022 | Purpose of Screen: Transfer | Screened By: CAVILL, LYNDSEY R | Supervisor Review |

| **CONFINEMENT LEVEL** | CONF. LEVEL | **MANAGEMENT LEVEL** | Enter Points |
|---|---|---|---|

EARLIEST RELEASE DATE=month **4** year **2023**

Management Score at last screening

Dated 03/02/2021 was **A** **0**

**SINCE THAT DATE**

1. Any escape attempt or conspiracy to escape secure adult custody in last 5 years?
   ☑ no   yes ☐

2. Two such escape incidents or any involving hostages or violence in last 10 years?
   ☑ no   yes ☐

**V**

3. Is the prisoner currently designated STG II?
   ☑ no   yes ☐

4. Is prisoner currently designated Sexually Aggressive?
   ☑ no   yes ☐

5. Is prisoner within 7 years of ERD, or if not has served more than three years of his controlling sentence?
   ☑ yes   no ☐

**IV**

6. Does prisoner have a pending escape sentence or had a DOC adult walkaway in last 5 years?
   ☑ no   yes ☐

7. Is prisoner serving a life sentence?
   ☑ no   yes ☐

8. Is the prisoner first year and potential VH assault risk without a definite parole within the next year?
   ☑ no   yes ☐

9. Has the prisoner been VH assault risk for less than 7 years?
   ☑ no   yes ☐

**II**

10. If VH assault risk, has prisoner received an assaultive major or class I misconduct in the last 7 years?
    ☑ no   yes ☐

11. Is prisoner designated as a STG I?
    ☑ no   yes ☐

12. Is there a juvenile arrest record and a walkaway from a juvenile or non-DOC adult facility in last 10 years?
    ☑ no   yes ☐

13. Is prisoner within 3 yrs of ERD, or within 4, with 2 served?
    no ☐
    yes ☑

**I**

1. Number of acts resulting in separate class I-II misconducts = **5**

2. Number of those which were non-bondable or resulted in felony conviction 1 X2= **2**

3. Number of those involving serious injury 0 X2= **0**

4. Has assault risk increased to V.H. = 4 = **0**

5. Classified one or more times to involuntary segregation = 4 = **0**

6. Found guilty of homicide, rioting, striking or inciting riot or strike =10= **0**

**SUBTOTAL, Unfavorable Behavior** **B** **7**

7. Number of six month periods completed without any class I-II misconducts or administrative segregation or convictions.
   Date of the periods: 12/12/21 to bank 0 X6= **0**

8. Number of six month periods completed with satisfactory work/school performance.
   Date of the periods: none in file 0 X3= **0**

9. Reached age 26 since last screening = 2 = **0**

10. Completed G.E.D or earned vocational certificate or college degree. = 1 = **0**

**SUBTOTAL, Favorable Behavior** **C** **0**

**TOTAL CHANGES**
(Indicate plus or minus)   (B-C=D) **D** **+7**

**NEW SCORE**   (A+D=E) **E** **7**
(If minus enter zero)  Range 0-35

**NEW MANAGEMENT LEVEL**

0-6 Level I; 7-14 Level II; 15-22 Level IV; 23-35 Level V

**2** II

Confinement Level **1** I

*Exhibit (12)*

**TRUE SECURITY LEVEL (Departure)**

If you agree that the highest level between boxes 1 or 2 correctly identifies this prisoner's true security needs, enter that level in box 3. If not, enter the appropriate level which does and the reason for the departure.

TRUE SECURITY LEVEL **3** III

Appropriate Signature is Required   APPROVED BY CLIFTON, DAVID   DATE 02/25/2022

**ACTUAL PLACEMENT LEVEL (Waiver)**

If there is a placement available at the prisoner's true security level enter that level here:
(if not, enter the level available, and the reason for the waiver)

W05 - Investigation warrants increased security level.

ACTUAL PLACEMENT LEVEL **4** IV

Appropriate Signature is Required   APPROVED BY HAYNIE, BRADLEY   DATE 02/25/2022

DISTRIBUTION: White - Record Office; Canary - Central Office; Pink - Counselor; Goldenrod - Prisoner

MICHIGAN DEPARTMENT OF CORRECTIONS

CSJ-247S 3/18/2019

## STEP I GRIEVANCE RESPONSE SUPPLEMENTAL FORM
(Use if space on the CSJ-247A is insufficient for a full response by stating on the CSJ-247A "See attached CSJ-247S")

| Prisoner Last Name: | Prisoner #: | Lock/Location: | Grievance #: |
|---|---|---|---|
| McDaniel | 720417 | 95/I-Unit | JCS-22-01-0042-15Z |

| Prisoner Interviewed: | YES ☐ | NO ☐ | If "NO", Reason: _____ |
|---|---|---|---|
| Extension Granted: | YES ☐ | NO ☐ | If "YES", Enter End Date: |

**COMPLAINT SUMMARY:**
Grievant alleges that RUM Stewart refused to send out his legal mail. He alleges he was trying to send mail out to a licensed attorney.

**INVESTIGATION SUMMARY:**
Upon investigation, It was found that prisoners McDaniel 720417 mail was denied going out as legal mail because it did not fit the policy definition as they have laye out as to what is to be considered legal mail.PD 05.03.118 page 3 of 13, paragraph P, states The expedited legal mail process also shall be available to prisoners to send mail to a court or court reporter to request a transcript of the prisoner's court proceeding and to legal service organizations (e.g., American Civil Liberties Union, State Appellate Defender Office, Michigan Appellate Assigned Counsel System). The prisoner may be required to present the mail unsealed to staff to verify that it qualifies for expedited legal mail handling.  In such cases, staff shall read only those sections of the mail that are necessary to make this determination.  The mail shall not be read in its entirety. McDaniel was trying to mail his paperwork to Western Michigan Cooley Law School.

**APPLICABLE POLICY, PROCEDURE, ETC.:**
PD-05.03.118, PRISONER MAIL

**DECISION SUMMARY:**
All relevant information has been considered.The investigation into the Grievant's claims does not reveal any violation of policies, procedures,or work rules by RUM Stewart.

Based on the above findings, this grievance has been denied.

Exhibit (13)

| RESPONDENT NAME: | C. Flynn | TITLE: | RUM |
|---|---|---|---|
| RESPONDENT SIGNATURE: | | DATE: | 1/21/22 |
| REVIEWER NAME: | D. Clifton | TITLE: | DW |
| REVIEWER SIGNATURE: | | DATE: | |

**Distribution:** Original - Step I Grievance Coordinator      Copies – 3 To Grievant (1 Prisoner Copy; 1 for Step II filing; 1 for Step III filing)

Proof of Service

I, Christopher McDaniel declares under penalty of perjury pursuant to 28 U.S.C § 1746 that I mailed (1) original and (3) copies of the enclosed Complaint, Verification of Complaint, Informa Pauperis & Summons to the U.S.D.C for the Eastern District of Michigan at the address below, by placing them in the Prisoners Expedited Legal Mail System at (S.T.F) on April 17, 23

U.S.D.C of Eastern District
231 Lafayette, Detroit, MI 48226

<u>Apr 17, 23</u>
Date

Christopher McDaniel
Christopher McDaniel
320 N. Hubbard
St. Louis, MI 48880

Chris McDaniel 720417
(STF)
320 N. Hubbard
St. Louis, MI 48880

PP

(Clerk of the Court)
United States District Court
231 Lafayette Blvd
Detroit, MI; 48226

Attention/Clerk of the Court
there are 2 different
re files within